IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT STAPLES, : | |
| Plaintiff, : | |
| : | |
| v. : | CIVL ACTION NO. 25-CV-0529 |
| : | |
| C/O J. THOMAS, *et al.*, : | |
| Defendants. : | |

MEMORANDUM

GALLAGHER, J. APRIL 21, 2025

*Pro se* Plaintiff Robert Staples, who is currently incarcerated at SCI Mahanoy, filed this civil action based on events he alleges occurred while he was previously incarcerated at SCI Phoenix. Staples has named a corrections officer, J. Thomas, and Superintendent Terra as Defendants. Staples seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Staples leave to proceed *in forma pauperis* and dismiss the Complaint without prejudice.

I. **FACTUAL ALLEGATIONS**[1]

In July 2024, Staples temporarily resided in "S" Block on the "A" side of the housing unit while completing a drug and alcohol treatment program. (Compl. at 2.) On his way back to the unit from the afternoon medicine dispersal on July 9, inmate John Doe approached Staples and allegedly attacked him with a homemade weapon: a sock-covered Master Lock. (*Id.* at 2-3.) Doe swung the weapon multiple times, hitting Staples. (*Id.* at 3.) Staples claims that he grabbed Doe's arm and took him "to the ground." (*Id.*) Staples restrained Doe on the ground for five

---

[1] The allegations are taken from the Complaint (ECF No. 2). The Court adopts the pagination assigned by the CM/ECF docketing system. Passages quoted from the Complaint have been corrected for spelling and capitalization.

minutes while waiting for corrections officers to respond. (*Id.*) When he arrived, Defendant Corrections Officer J. Thomas ordered the inmates to stop fighting. (*Id.*) Staples claims that, when he "released his hands off the John Doe inmate," Doe began to assault him again. (*Id.*) Thomas deployed oleoresin capsaicin (OC) spray on the two inmates. (*Id.*) Other corrections officers responded, handcuffed the two inmates, and escorted Staples to the medical department. (*Id.*) Staples claims that he suffered injuries to his back and shoulder from the assault and to his mouth, nose, and eyes from the spray. (*Id*. at 4.)

According to Staples, Thomas prepared a misconduct report of the incident that "was discovered to be fraudulent" and "dismissed without prejudice." (*Id.*) Thomas wrote a second misconduct report of the incident, and an examiner conducted a disciplinary hearing. (*Id.*) No camera footage was made available even though, according to Staples, Defendant Superintendent Terra "always ha[s] surveillance observations for safety of security measures of the facility." (*Id*.) As a result of the disciplinary proceedings, Staples served thirty days in the Restrictive Housing Unit (RHU). (*Id*.)

Staples filed this Complaint alleging that Defendants were deliberately indifferent to his health or safety. (*Id.* at 5.) He claims that Thomas used excessive force when he used OC spray and that Terra failed to properly supervise Thomas. (*Id.*) Staples seeks an injunction barring the Defendants from working within 100 feet of him and prohibiting retaliation by Defendants or corrections staff employed at SCI Phoenix, as well as money damages.[2] (*Id.*)

---

[2] Staples also seeks a declaration that his rights have been violated. (Compl. at 5.) However, declaratory relief is unavailable to adjudicate past conduct, so the request for declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some

**II.      STANDARD OF REVIEW**

The Court will grant Staples leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Under 28 U.S.C. § 1915(e)(2)(B), the court must screen the Complaint and dismiss it if it is frivolous, malicious, fails to state a claim for relief, or seeks damages from an immune defendant.  *Id.* § 1915(e)(2)(B)(i)-(iii).  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) (*per curiam*); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  Accordingly, the Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation, [the Court will] accept the facts alleged in [the] *pro se* complaint as true, draw all reasonable inferences in [the plaintiff's] favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible Eighth Amendment claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  Because Staples is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182,

---

future conduct.").  Further, his transfer to another facility moots any claims for prospective injunctive relief.  *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *see also Griffin v. Beard*, 401 F. App'x 715, 716 (3d Cir. 2010) (*per curiam*) (same).  Accordingly, the remainder of the Court's analysis is directed to Staples's damages claims.

[3] Because Staples is a prisoner, he must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act.

185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

In reviewing a *pro se* complaint, the Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*

### III.   DISCUSSION

Staples asserts his constitutional claims pursuant to § 1983, the statute enabling a plaintiff to raise claims for violations of the federal constitution.[4] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, meaning a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims brought against that defendant.[5] *See Rode v.*

---

[4] To the extent Staples invokes 42 U.S.C. §§ 1981, 1985, and 1986, (Compl. at 1), he has not pleaded a basis for relief under any of these provisions. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) (explaining that § 1983 provides "the exclusive remedy for violations of § 1981 by state actors"); *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) ("[T]he reach of section 1985(3) is limited to private conspiracies predicated on racial, or perhaps otherwise class based, invidiously discriminatory animus." (internal quotations omitted)); *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) ("[Section] 1986 constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and 'transgressions of § 1986 by definition depend on a preexisting violation of § 1985.'" (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)).

[5] Staples sued the Defendants in their individual and official capacities. (Compl. at 8.) Official capacity claims against a defendant are indistinguishable from claims against the entity that employs the defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-

4

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). In other words, "'[e]ach Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).

     **A.**    **Eighth Amendment Claim Against Corrections Officer Thomas Individually**

Staples claims that Thomas's use of OC spray constituted excessive force under the Eighth Amendment because Doe was the aggressor and Staples acted in self-defense. (Compl. at 3-4.) He also claims that Thomas used an "excessive" amount of spray. (*Id.* at 4.) The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). A claim under the Eighth Amendment contains subjective and objective components. *Id.* A defendant "must act with a 'sufficiently culpable state of mind,' and the conduct must be objectively harmful enough to violate the Constitution." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (*per curiam*) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)). With respect to the subjective part of an excessive force claim, the Court must assess whether the

---

capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Thus, Staples's § 1983 "official capacity" claims for damages against the Defendants—both of whom are employed by the Pennsylvania Department of Corrections—are really claims against the Commonwealth, which is shielded from such claims by Eleventh Amendment immunity and, in any event, is not considered a "person" subject to liability under § 1983. *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."); *Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983). The rest of the Court's analysis will focus on the damages claims against the Defendants in their individual capacities.

prisoner has plausibly alleged that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7). The factors used to determine whether the force applied was excessive include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). "The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson*, 837 F. App'x at 862 (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)); *see also Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (*per curiam*) (explaining that the use of chemical agents is not a per se constitutional violation).

With this framework in mind, Staples has not pleaded a plausible excessive force claim. To start, he has not pleaded that Thomas acted with a "sufficiently culpable state of mind." *Gibson,* 837 F. App'x at 862 (quoting *Wilson v. Seiter*, 501 U.S. at 298). Staples states that he was restraining Doe on the floor when Thomas first arrived on the scene. (Compl. at 3.) Thomas ordered the inmates to stop fighting, and Staples alleges that he released Doe, but Doe started assaulting him again. (*Id*.) Staples claims that Thomas then deployed OC spray on both inmates. (*Id*.) Under the facts Staples has pleaded in his Complaint, Thomas was the sole responder to what would reasonably be perceived as a physical altercation between two inmates. *See Whitley*, 475 U.S. at 321; *Batchelor v. Spagnoletti*, No. 24-1258, 2025 WL 590335, *1 (E.D. Pa. Feb. 21, 2025) (concluding that the need and amount of force as assessed from the

perspective of a reasonable officer weighed in favor of officer's use of pepper spray when faced with "a split second need to control two incarcerated persons fighting in the common area"). Even by Staples's telling, when Thomas arrived on the scene, he would have observed Staples restraining Doe on the floor, and Thomas lacked knowledge of who started the altercation. (Compl. at 3); *see Hudson*, 503 U.S. at 6 (noting that prison officials must decide whether to use force during a disturbance "in haste, under pressure, and frequently without the luxury of a second chance" (quoting *Whitley*, 475 U.S. at 321)).

Staples also vaguely argues that Thomas used OC spray with "no warrant or reason [,] without need or provocation," but this conclusory allegation does not suffice to make the claim plausible. *See Iqbal*, 556 U.S. at 678 (conclusory allegations are insufficient to meet the plausible pleading standard). The facts alleged by Staples in this Complaint suggest that Thomas deployed OC spray "in a good-faith effort to maintain or restore discipline;" none of the facts plausibly support a claim that Thomas acted "maliciously and sadistically to cause harm" when he used OC spray.[6] *See Jackson*, 2020 WL 2847925, at *3.

The Eighth Amendment claim against Defendant Thomas will accordingly be dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii). Staples will be permitted to amend the claim if he can cure the defects explained above.[7]

---

[6] Staples broadly states that he suffered from an "excessive amount of O.C. chemical agents in the mouth, nose, and eyes, with the health risk of trouble breathing." (Compl. at 4.) According to the Complaint, Staples was taken to the medical unit for treatment. (*Id*.) However, Eighth Amendment's prohibition excludes *de minimis* uses of physical force in the prison context, "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 8, 9-10 (citation and quotation marks omitted). In light of the facts alleged in the Complaint and discussed above, Staples's conclusory statement that Thomas used "excessive" OC spray does not comprise a plausible claim, *see Iqbal*, 556 U.S. at 678, and more details must be provided if Staples intends to pursue this claim in any amended complaint.

[7] It is unclear whether Staples also intends to pursue a claim against Thomas based on his filing of an allegedly false misconduct. However, "the filing of a fraudulent misconduct report

### B. Eighth Amendment Claim Against Superintendent Terra Individually

Staples does not make a clear claim against Superintendent Terra, but he mentions that Terra should have protected him from Thomas's allegedly excessive use of OC spray (Compl. at 5), and that Terra violated "facility policy" (*id.*). The Court liberally reads these statements to allege a failure to supervise claim. Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

"Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if

---

and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*), as "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."). Since it is apparent that Staples received a hearing, he cannot state a claim based on the filing of an allegedly false misconduct against him.

he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). A supervisor may also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).[8]

Nowhere in the Complaint does Staples contend that Terra was present or participated in the described incident, or that he directed or acquiesced in Thomas' actions. *See Barkes*, 766 F.3d at 316. Moreover, Staples fails to identify any policy, practice, or custom that Terra established or maintained that caused his injury. *See id.* at 317. Staples appears to have sued Terra because he serves as the Superintendent at SCI Phoenix—an insufficient basis upon which to hold him liable under § 1983. *See Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("His conclusory statements that defendants Delbalso, Mason, and

---

[8] The first type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d at 227. A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation).

White 'created a policy or custom under which unconstitutional practices occurred' are insufficient to allege personal involvement." (quoting *Parkell v. Danberg*, 833 F.3d 313, 331 (3d Cir. 2016) ("To presume that [unconstitutional] practices arose from [an official's] policies merely because of his position . . . is to rely on respondeat superior.")); *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005) (explaining that "merely hypothesiz[ing] that [a defendant] may have been somehow involved simply because of his position as the head of the [relevant office]" does not support an inference of personal involvement). Accordingly, the Court will dismiss the Eighth Amendment claim against Terra.

### C. State Law Claims

Staples mentions his "state law claims" in his Complaint, but beyond that single reference, he fails to specify any causes of action under Pennsylvania law. (*See* Compl. at 1.) Thus, any such claim is not plausible. Staples will be afforded another opportunity to state the basis of any state law claims in an amended complaint. To the extent that he asserts any state law claims here, they will be dismissed without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Staples leave to proceed *in forma pauperis* and dismiss his Complaint.[9] Staples will be given leave to file an amended complaint so that he has an opportunity to replead his claims in the event he can clarify the circumstances and events giving rise to those claims. An appropriate order follows, which provides further instruction as to amendment.

BY THE COURT:

*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**

---

[9] Staples's Motion for Leave of Court for Case Management Order (ECF No. 3) will be denied without prejudice.

11